AMERICAN BLUE STONE COMPANY, Plaintiff, *v.* COHN CUT STONE COMPANY, Defendant.

(Supreme Court, Erie Special Term, January, 1917.)

Contempt — when corporation will be adjudged guilty of — depositions — evidence — examination before trial.

Where a corporation defendant duly served with an order for its examination before trial and for the production thereon of certain of its books and papers containing material evidence for the plaintiff fails to produce a single one of said books or papers, it will be adjudged guilty of contempt, its answer stricken out and plaintiff permitted to proceed as upon a default in pleading.

Where on the proceeding before the referee pursuant to said order for examination, which was also served upon defendant's secretary, his conduct was evasive, disingenuous and contemptuous plainly indicating the intention of an unscrupulous mind to defeat and evade the purpose of the order, and having the effect to defeat, impede, impair and prejudice the rights and remedies of the plaintiff, and throughout the examination he persistently attempted to evade answers to material and proper questions, he will be adjudged guilty of contempt.

MOTION to punish the defendant and Joseph M. Cohn, its secretary, for contempt, in failing to produce books

and papers, and Joseph M. Cohn for refusing to sign his deposition after it had been taken.

Elmer E. Charles, for plaintiff.

Abraham H. Spigelgass, for defendant.

BISSELL, J.  This action was brought to recover upon a guaranty of the payment of a bond and mortgage caused to be transferred by the defendant to plaintiff to apply upon an indebtedness for stone sold to the defendant.

The complaint alleges that the guaranty was executed by the defendant December 10, 1908, under its corporate seal, and signed by Joseph M. Cohn, president, guaranteeing " the payment of the full amount of the principal and interest of said bond and mortgage at the time and in the manner provided in and by said bond and mortgage; " that the bond and mortgage became due in 1911, and that no part has been paid except one year's interest.  The defendant by its amended answer puts in issue every allegation of the complaint and interposes several defenses, one of which is " that the alleged agreement of guaranty purported to have been made and executed by the defendant, as described  *  *  *  in the complaint, was not executed with the consent of or by the defendant or by any officer thereof duly authorized and empowered to execute or deliver the same; " and that the act was *ultra vires.* The plaintiff, in preparing to establish its cause of action served upon the defendant and upon said Joseph M. Cohn, admitted to be its secretary, an order for examination before trial and for the production upon such examination of " any and all books kept by the secretary of said defendant in the years 1907, 1908 and 1909; all books kept by the defendant or its secretary

during those years showing the election of directors and officers of said corporation defendant; the stock books or books of said corporation showing the amount of stock issued by said corporation and the names of the stockholders therein in the years 1907, 1908 and 1909; the books of account of the defendant showing its account with the plaintiff in the years 1908 and 1909; all letters written by defendant to plaintiff, and from plaintiff to defendant, in the years 1908, 1909 and 1910 concerning the bond and mortgage, or either of them, described in the complaint herein and in the possession of defendant; and all letter press or other copies kept by defendant and in its possession of all letters so written by defendant to plaintiff.''

A perusal of the record of the proceedings before the referee pursuant to the order discloses a course of conduct on the part of Joseph M. Cohn, representing the defendant, which must be characterized as evasive, disingenuous and contemptuous, plainly indicating the intention of an unscrupulous mind, guided by a shrewd attorney, to defeat and evade the purpose and object of the order made by the court pursuant to the provisions of the statute providing for an examination before trial, and having the effect to defeat, impede, impair and prejudice the rights and remedies of the plaintiff. The defendant failed to produce a single one of the books and papers it was ordered to produce, and Joseph M. Cohn, its secretary, gave an explanation of the failure to do so that is wholly unsatisfactory and is unbelievable. He also refused to subscribe the deposition he had already made unless certain answers to material questions which gave some useful information to the plaintiff were stricken out on the ground that these answers might tend to incriminate him.

It appears from the record that the defendant com-

pany was organized in October, 1907; that the original stockholders were said Joseph M. Cohn, Minnie B. Cohn, his wife, and one Joseph Jervitz. Asked if he was its first president he answered, " I don't remember unless I have something to refresh my memory." The original guaranty, a copy of which is set forth in the complaint, was then shown to the witness and he was asked if the signature thereto was his. "A. I believe it is, yes. Q. And the words ' Cohn Cut Stone Company. Joseph M. Cohn, President ' are in your handwriting? A. I think so. Q. Now, that you wrote on the 10th of December, 1908, didn't you? A. I believe so, yes. Q. And at that time you were the president of this company, were you not? A. I cannot answer that without consulting my attorney. Q. You know at the time that you signed your name as president whether you were the president of the company, don't you? A. I will not answer unless I consult my attorney."

The record proceeds: " Witness has consulted his attorney, Mr. Spigelgass, and his attorney advises him that he may decline to answer on the ground that it might tend to incriminate him. A. I refuse to answer the question upon the ground stated by my counsel."

Throughout the examination he professes not to be able to remember very much of anything without referring to the books; that he could not remember who the stockholders of the company were without the books; that he could not remember when he was president. And being shown certain letters he testified that he could not remember writing them, and could not tell whether they were written from the defendant's office. He testified that they kept carbon copies of letters, and being asked if the defendant company received letters from the plaintiff in the fall of 1908 he answered that he presumed they did, and when asked where those

letters were his first answer was, " destroyed in the fire." " Q. You say they were destroyed? A. I believe they were. Q. Can you swear to that? A. No, I cannot swear to that. They are not in the office. Q. Did you look anywhere else? A. No."

And in reply to his own counsel he testified: " Q. Did you have those letters at the time of the fire? A. Yes. Q. Copies of the letters sent by you? A. Yes. Q. Are those the letters that might possibly have been destroyed by the fire? `A. They are."

He testified that he could not say without seeing the books whether the defendant charged up to the plaintiff anything on account of the guaranteed mortgage which was turned over to the plaintiff in payment for stone sold to the defendant. At one time he testified that the office was destroyed by fire, and at another that a part of the office was so destroyed, but that the contents of the safe, which did not include the books and papers ordered to be produced, were not destroyed, and that he did not know whether these books and papers were burned but that they might have been; and, further, that he did not know whether the insurance company took them. It is incredible that all of the books of account, the stock book, the secretary's book, the stock certificate book, and all the letters and copies of letters of this company should be destroyed by fire or otherwise lost, and that Joseph M. Cohn, who had been its president, and closely interested in its affairs from the time of its incorporation, and who is at the present time its secretary, and has had charge of the company's office, should not know whether these books and papers were burned or destroyed or where they are. He evades the direct question and places himself in a position where he could afterwards produce the books if he desired to do so.

Throughout the examination there is evident a persistent attempt to evade answers to material and proper questions, and while at the beginning some important information was elicted from the witness without any claim of immunity on his part, after the stenographer's minutes had been written out, and it could be seen that there was some evidence adduced which would be material for the use of the plaintiff, the witness refused to subscribe the deposition unless the material questions and answers were stricken out, and the plaintiff thus deprived of practically all of the benefits derived from the examination.

His refusal to subscribe the deposition on the ground that something that he had originally testified to, without objection, might tend to incriminate him, is entirely without foundation or merit; and it is apparent from all of the proceedings that this claim was in furtherance of his attempt to prevent the defendant from giving to the plaintiff valuable information for use upon the trial of the action. All of the answers which he asked to have stricken out relate to transactions not later than 1909, and if any of those transactions amount to any criminal offense the Statute of Limitations would have long since run against the prosecution of such offense. The limitation of prosecution for all felonies except murder is five years; and it is laid down in the text books, and has been held repeatedly by the courts, that once the Statute of Limitations has run a witness cannot refuse to answer on the ground that the evidence might tend to incriminate him, for he cannot be prosecuted for the alleged offense. 40 Cyc. 2542, n. 62; n. 63; Wigm. Ev. § 2279; *People* v. *Cassidy,* 213 N. Y. 388–394; *McCreery* v. *Ghormley,* 6 App. Div. 170; *People* v. *Cahill,* 126 id. 391; *Meyer* v. *Mayo,* 173 id. 199.

The defendant would not be excused from answering the questions unless it should appear that he had been indicted within five years, and the indictment was still pending. *Meyer* v. *Mayo, supra.*

Moreover, the witness would seem to have waived irrevocably any privilege he may have had to refuse to answer upon the ground that his answers might tend to incriminate him, by first giving the testimony to which he now refuses to subscribe, without claiming the statutory privilege. " The giving of testimony by a person that can be used in a criminal case against him like disclosing conversations between persons occupying confidential relations, makes it thereafter impossible to recall the admission or the disclosures resulting from the evidence. The admission made by a person who gives testimony in court of a transaction without asserting his constitutional privilege cannot be recalled." *People* v. *Cassidy, supra,* 394.

Wigmore on Evidence, section 2276, speaking of the witness's privilege, lays down the doctrine: " He may waive his privilege; this is conceded. He waives it by exercising his option of answering; this is conceded." The object of the statute providing for the privilege of the witness is to prevent compelling a witness to give to the world the facts upon which he can be prosecuted, but once having given them he cannot retract them when he may think it may be to his advantage to do so. And in this case it appears upon the face of the order for the examination that the Statute of Limitations had run to protect the witness against prosecution, assuming that he is correct in his declaration that answers to the questions might tend to incriminate him.

Joseph M. Cohn is adjudged guilty of contempt of court, and a fine is imposed upon him not exceeding the amount of complainant's costs and expenses, the

amount to be determined upon settlement of the order; he to stand committed until such costs and expenses and fine are paid.

The defendant Cohn Cut Stone Company is also adjudged guilty of contempt of court, and is fined the sum of $250, and in addition thereto, because of its failure to produce, when ordered to do so, the books and papers containing material evidence for the plaintiff, the answer of the defendant will be stricken out and the plaintiff may proceed as upon a default in pleading, with ten dollars costs of this motion. *Edison Electric Light Co.* v. *Tipless Lamp Co.*, 72 Misc. Rep. 116.

Ordered accordingly.